**Daniel VANCE, Plaintiff–Appellant,**

v.

**Jay BARRETT; E.K. McDaniel; Becky Messick; Robert Miller; Michael Scheel, Defendants–Appellees.**

**Timothy H. Johnson, Plaintiff–Appellant,**

v.

**Ron Angelone; Jay Barrett; E.K. McDaniel; Becky Messick; Robert Miller; Michael Scheel, Defendants–Appellees.**

Nos. 01–15819, 01–15870.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 7, 2002.

Submission Deferred Nov. 14, 2002.

Resubmitted Sept. 30, 2003.

Filed Sept. 30, 2003.

Robert A. Brundage, Bingham McCutchen, LLP, San Francisco, CA, argued the cause for the plaintiffs-appellants and filed briefs; Leslie G. Landau, was on the briefs.

T. Laura Lui, Deputy Attorney General, Carson City, NV, argued the cause for the defendants-appellees and filed briefs; Frankie Sue Del Papa, Attorney General, Carson City, NV, was on the briefs.

Before STAPLETON,* O'SCANNLAIN, and FERNANDEZ, Circuit Judges.

## OPINION

O'SCANNLAIN, Circuit Judge.

We are asked to decide constitutional challenges to the administration of inmate trust accounts by state prison authorities.

* The Honorable Walter K. Stapleton, Senior United States Circuit Judge for the Third Circuit, sitting by designation.

## I

To avoid the attendant problems that one might imagine would arise from inmates keeping currency in their cells, Nevada Department of Prisons ("NDOP") inmates are required, by statute, to keep their money in a personal property trust fund run by the State of Nevada. Nev. Rev.Stat. 16 § 209.241(1) (1993).[1] Any money earned by an inmate during incarceration is credited to such fund, and any money sent to the inmate by outside sources such as friends and relatives is to be deposited in such fund.

Each inmate has a personal property account and a savings account. An inmate's personal property account is used for his personal needs. Twenty percent of an inmate's earnings from prison work are deposited into such account. The remaining eighty percent of an inmate's wages is automatically deposited in his savings account for use following incarceration. Once an inmate's savings account reaches a balance of $200 any amount in excess may be transferred to his personal account.

By statute, "interest and income earned on the money in the [overall] fund, after deducting any applicable charges, must be credited to the fund." Nev.Rev.Stat. 16 § 209.241(2)(c). Upon release, an inmate is entitled to his portion of the overall fund.

In 1994, NDOP promulgated a new fiscal agreement form and required all inmates to sign it to be eligible for prison employment. The fiscal agreement authorized prison officials to deduct, from the inmates' savings account, funeral expenses, any costs incurred by NDOP connected

1. The statutes at issue have been amended many times over the past several years. We apply the version of the statutes in place when these lawsuits were first filed.

with an inmate's release, and "the cost of any expense incurred by NDOP on [the inmate's] behalf, whether [the inmate] incurred the expense voluntarily or involuntarily." None of these deductions were authorized by law. *Id.* § 209.246. It also required the inmates to certify that funds on deposit in their savings accounts will not accrue interest for their sole benefit.[2] If an inmate refused to sign the agreement, he or she was terminated from prison employment.

Daniel Vance and Timothy Johnson, NDOP inmates, (collectively "Vance") refused to sign the agreement and were subsequently fired from their prison jobs. Shortly thereafter, Vance brought suit under 42 U.S.C. § 1983, alleging that prison officials, Ron Angelone, Robert Miller, Becky Messick, E.K. McDaniel, Michael Scheel, and Jay Barrett (collectively "prison administrators" or "prison officials"), violated his constitutional rights by conditioning his employment on the waiver of his constitutionally protected property rights and by retaliating against him for refusing to waive such constitutional rights.[3] He prayed for injunctive relief, lost wages of $20 a month, good time credits of 10 days per month, and punitive damages.

The district court granted the prison administrators' motion to dismiss, holding that because inmates have no constitutional right to prison employment Vance failed to state a valid claim. In *Vignolo v. Miller*, 120 F.3d 1075, 1078 (9th Cir.1997), we reversed. Our holding, however, was narrow, stating only that dismissal for failure to state a claim "on the bare ground that there is no constitutional right to prison employment" was reversible error. *Id.*

We did not indicate how the claim should be analyzed.

Upon remand, the district court sua sponte consolidated the claims of Vance and Johnson because they are based on the same facts and law. Initially, the court granted the prison administrators' motion for summary judgment, holding that the fiscal agreement served a legitimate penological goal, but, upon Vance's motion for reconsideration, reversed itself, holding a genuine issue of material fact existed as to such issue.

The prison administrators thereafter moved for summary judgment again, this time predicating its request on qualified immunity, which was granted on the ground that Vance failed to prove that the law regarding unconstitutional conditions and retaliatory actions was clearly established. As evidence of the lack of clarity in the law, the district court cited its own mistake for dismissing the action for failing to state a claim upon which relief can be granted: "The fact that there were different understandings about the nature of this right between this Court and the Ninth Circuit three years after the violation occurred leads this Court to find that this right was not 'clearly established' at the time the 'Fiscal Agreement' form was adopted." *Canada v. Miller*, No. CV–N–94–362–DWH, at 6 (D.Nev. Mar. 7, 2001) (order granting summary judgment). Vance and Johnson timely appeal.

## II

■ The Supreme Court in *Saucier v. Katz*, 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001), reminded us that before we proceed to the question of qualified immunity, we first must ask: "Taken in the light most favorable to the party

---

2. The 1994 agreement was not materially different than the previous agreement in effect from 1989 to 1993 in this regard.

3. Vance also alleged conspiracy to commit these acts. The district court dismissed this claim because it found no actual deprivation of rights; it was not appealed to this court.

asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Id.* at 201, 121 S.Ct. 2151. If our answer is no, the case must be dismissed; there can be no valid cause of action. *Id.* It is only if "a violation *could be* made out on a favorable view of the parties' submissions," *id.* (emphasis added), that we must go on to determine whether the constitutional right was clearly established, and, if so, whether a reasonable prison official would have believed his conduct was clearly unlawful. *Id.* at 202–03, 121 S.Ct. 2151.

Accordingly, we first turn to the merits of Vance's claim.

## A

■ Vance alleges that the prison administrators twice violated his constitutional rights: once, by placing an unconstitutional condition on his property rights in his inmate trust accounts (requiring him to sign a waiver to forgo accrued interest and consent to unauthorized deductions), and then again, by unconstitutionally retaliating against him when he sought to exercise

such rights (firing him when he refused to sign the waiver). As a prerequisite to discerning a constitutional violation for an unconstitutional condition or unconstitutional retaliation, however, we must first examine the validity of the underlying alleged constitutional rights. *Rizzo v. Dawson,* 778 F.2d 527, 531 (9th Cir.1985) (retaliatory firing); *Parks v. Watson,* 716 F.2d 646, 651 (9th Cir.1983) (per curiam) (unconstitutional condition). If no constitutional rights would have been in jeopardy—in other words if NDOP could legally have simply confiscated Vance's net accrued interest—no claim for retaliation or unconstitutional conditions could be made out.

■ Vance raises two constitutional rights that NDOP jeopardizes in the fiscal agreement: (1) his Fifth Amendment right[4] to just compensation for the "taking" of his interest, and (2) his Fourteenth Amendment due process right, which prohibits prison officials from confiscating accrued net interest without statutory authorization and process.[5] Although these rights are similar,[6] and in this case, arise

---

**4.** The Fifth Amendment has been incorporated to apply against the states by the Fourteenth Amendment's Due Process Clause. *See Webb's Fabulous Pharmacies, Inc. v. Beckwith,* 449 U.S. 155, 160, 101 S.Ct. 446, 66 L.Ed.2d 358 (1980) (applying the Fifth Amendment to the states through the Fourteenth Amendment).

**5.** Neither of these rights were alleged to have been actually abridged in Vance's case because he refused to sign the agreement, but that is irrelevant: the violations at issue in this case are the conditions placed on these constitutional rights and the retaliation for refusing to waive these rights. The fact that NDOP forced Vance to make the choice raises a constitutional question. *See Parks,* 716 F.2d at 652.

**6.** Both of these claims are dependent on the existence of an underlying constitutionally protected property interest, and we have little

trouble concluding that Vance has such a protected right to accrued interest on his inmate accounts. In 1993, we held that the interest accrued on these NDOP inmate accounts is a constitutionally protected property right. *Tellis v. Godinez,* 5 F.3d 1314, 1317 (9th Cir.1993) (interpreting the Nevada statute in question: "The plain language of this section, read in the context of the entire statute, does create a protected property interest in interest and income actually earned on money deposited in the prisoners' personal property fund."); *see Schneider v. Cal. Dept. of Corrs.,* 151 F.3d 1194, 1199–1200 (9th Cir. 1998) (stating that *Tellis* created a constitutionally protected property interest to accrued interest); *cf. Parratt v. Taylor,* 451 U.S. 527, 536, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981) (holding that an inmate had a constitutionally protected property right in hobby kits he ordered while in prison); *Wright v. Riveland,* 219 F.3d 905, 913 (9th Cir.2000) (inmates have a protectable property interest in funds

from the same underlying government action, the protections afforded by each are distinct. The Takings Clause limits the government's ability to confiscate property without paying for it. It is "designed to bar Government from forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole." *Armstrong v. United States,* 364 U.S. 40, 49, 80 S.Ct. 1563, 4 L.Ed.2d 1554 (1960). The Due Process Clause, on the other hand, requires that the government provide appropriate procedural protections when taking such property—with or without compensation. *See Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 541, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985) (holding that the Constitution requires constitutionally adequate procedures by which to deprive individuals of property interests). Both of these rights must be considered.

### 1

The Fifth Amendment provides that "private property [shall not] be taken for public use, without just compensation." U.S. Const. Amend. V. Although we have previously determined that NDOP inmates have a constitutionally protected property right to receive accrued interest, *see Tellis,* 5 F.3d at 1317, we have not delineated the extent of such rights. Because Vance's argument that state officials exceeded their authority goes to the core of his due process claim, a takings analysis is more logically confined to those deductions in fact authorized by statute. Without a statutory mandate, prison officials had no authority to confiscate inmates' property, and

we analyze prison officials' *ultra vires* actions under the Due Process Clause below. But our first question is whether the state may allow state officials constitutionally to deduct "applicable charges" from an inmate's account.

 While the term "applicable charges" is not defined, from the statutory scheme it is clear that "applicable charges" refers to those expenses incurred in creating and maintaining the inmates' accounts. Nev.Rev.Stat. 16 § 209.241(3). We have no trouble concluding that the officials may deduct such expenses. "[A] reasonable user fee is not a taking if it is imposed for the reimbursement of the cost of government services." *United States v. Sperry Corp.,* 493 U.S. 52, 63, 110 S.Ct. 387, 107 L.Ed.2d 290 (1989). A charge for the creation and maintenance of trust accounts certainly fits that category. *Phillips v. Washington Legal Foundation,* 524 U.S. 156, 171, 118 S.Ct. 1925, 141 L.Ed.2d 174 (1998) ("Our holding does not prohibit a State from imposing reasonable fees it incurs in generating and allocating interest income."); *see Sperry,* at 61–62, 62 n. 8, 110 S.Ct. 387 (noting that in *Webb* it "expressed 'no view as to the constitutionality of a statute that prescribes a county's retention of interest earned, where the interest would be the only return to the county for services it renders,' " which was analogous to the user fee at issue in that case); *cf. Webb's Fabulous Pharmacies, Inc. v. Beckwith,* 449 U.S. 155, 163, 101 S.Ct. 446, 66 L.Ed.2d 358 (1980) (holding unconstitutional an "exaction[which was] a forced contribution to general governmental reve-

received from outside sources); *Reynolds v. Wagner,* 128 F.3d 166 (3d Cir.1997) ("Inmates have a property interest in funds held in prison accounts. Thus, inmates are entitled to due process with respect to any deprivation of this money."); *Mahers v. Halford,* 76 F.3d 951, 954 (8th Cir.1996) (protectable property interest in funds from outside sources);

*Campbell v. Miller,* 787 F.2d 217, 222 (7th Cir.1986) (protectable property interest in funds held in prison accounts). In a later case, we further held that inmates have a constitutionally protected property right in interest accrued in their trust accounts regardless of whether a statute specifically creates such rights. *Schneider,* 151 F.3d at 1200.

nues, and [was] not reasonably related to the costs of using the courts").

Because Vance does not allege that the charges are unreasonable or unrelated to the administration of his account, his takings claim must fail.[7] *Sperry Corp.*, 493 U.S. at 61–63, 110 S.Ct. 387.

### 2

Such a conclusion does not end our inquiry with respect to accrued net interest, however. In addition to the underlying Fifth Amendment right to just compensation for the deprivation of his property, Vance also alleges the Due Process Clause prohibits prison officials from denying inmates accrued interest above and beyond "applicable charges." Although closely related to Vance's takings claim based upon the same underlying property right, Vance's due process claim rests not on the failure to provide just compensation, but on the lack of authority and process with which the confiscation would have occurred.

■ "While the legislature may elect not to confer a property interest ... it may not constitutionally authorize the deprivation of such an interest, once conferred, without appropriate procedural safeguards." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985) (quoting *Arnett v. Kennedy*, 416 U.S. 134, 167, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974) (Powell, J., concurring in part and concurring in result in part)); *Tellis*, 5 F.3d at 1317 ("The requirement to credit interest and income earned to the fund would be meaningless in practical effect if we construe the section to authorize the director to spend that money at his discretion."). Here, the prison administrators provided no procedure, either before or after the deprivation would have taken place, in contravention of the clear mandate of the state legislature.[8]

■ Without underlying authority and competent procedural protections, NDOP could not have constitutionally confiscated the net accrued interest.[9] *See Tellis*, 5 F.3d at 1317; *Quick v. Jones*, 754 F.2d 1521, 1523 (9th Cir.1985) (citing *Sell v. Parratt*, 548 F.2d 753, 759 (8th Cir.1977)

7. These circumstances are different from those in *Brown v. Legal Foundation of Washington*, 538 U.S. 216, 123 S.Ct. 1406, 155 L.Ed.2d 376 (2003). In *Brown*, the statute at issue provided that the State would keep any and all accrued interest. Here, the statute provides the opposite: the accrued interest must be paid to the inmates. In such a case, Vance is not arguing that the prison administrators took the interest without just compensation, but rather that they did not have the authority to make the deductions in the first place. This claim is more appropriately addressed under the Due Process Clause.

8. Importantly, this is not a case where the prison administrators' actions are discretionary. *Compare Meachum v. Fano*, 427 U.S. 215, 228, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976), *with Tellis*, 5 F.3d at 1317.

9. NDOP admits that on average $1.50 per inmate net interest is annually generated.

They contend that such interest would be "gobbled up," however, in administrative costs if they had to create an individualized determination. Nonetheless, at this time, there is no doubt that less the "applicable charges" in effect—which did not include the administrative costs—the average inmate is entitled to net accrued interest under the law. Nothing stops NDOP from taking "applicable charges"—for example, it could charge a rate similar to that of a commercial bank if inmates wish to receive accrued interest—but it cannot refuse to give inmates the choice in the first place; the Nevada Revised Statutes provide the inmates such a right. Vance's retaliation claim, moreover, concerns not simply the deprivation of net accrued interest, but the loss of prison employment as a result of his failure to consent to prison officials' violation of due process in seeking to deduct charges without statutory authorization.

("An administrative agency [i.e., the Department of Correctional Services] has no right without underlying statutory authority to prescribe and enforce forfeitures of property ... when an agency does so, it violates the due process clause of the fourteenth amendment.")); *cf. Halverson v. Skagit County*, 42 F.3d 1257, 1260 (9th Cir.1994) ("When the action complained of is legislative in nature, due process is satisfied when the legislative body performs its responsibilities in the normal manner prescribed by law." (quotation marks and citation omitted)). It is therefore clear that Vance had a valid due process right in jeopardy.

## III

■ Normally, we would now turn to the merits of Vance's unconstitutional condition claim. The prison administrators, however, failed to brief this issue and do not dispute the possibility that such a claim could be made out if the underlying constitutional rights were valid. Because we conclude that the qualified immunity issue is dispositive, we decline to speculate needlessly on the underlying merits of Vance's claim and turn directly to qualified immunity.[10]

■ We must answer two questions when deciding whether the prison officials are entitled to qualified immunity: "(1) Was the law governing the state official's conduct clearly established? (2) Under that law could a reasonable state official have believed his conduct was lawful?" *Estate of Ford v. Ramirez–Palmer*, 301

F.3d 1043, 1050 (9th Cir.2002). To determine whether the law is clearly established, we cannot look at general principles of law, but must undertake our inquiry "in light of the specific context of the case." *Saucier*, 533 U.S. at 201, 121 S.Ct. 2151. "The relevant dispositive inquiry ... is whether it would be clear to a reasonable [official] that his conduct was unlawful in the situation he confronted." *Id.* at 202, 121 S.Ct. 2151. "If the law did not put the [officials] on notice that [their] conduct would be clearly unlawful, summary judgment based on qualified immunity is appropriate." *Id.*

To maintain his prison employment, Vance was required to foreswear his statutory right to accrued net interest and his due process right to be free of unauthorized deductions from his account. We have clearly held that the Due Process Clause protects inmates from unauthorized deductions. *Tellis*, 5 F.3d at 1317 (holding that NDOP's failure to pay interest violated inmates' due process); *Quick v. Jones*, 754 F.2d 1521, 1523 (9th Cir.1985) (holding failure to follow correct state law procedures violates due process of law). While the underlying constitutional violation is clear, the law concerning an unconstitutional condition predicated on a procedural due process violation in a prison context is less settled.

■ "Under the well-settled doctrine of 'unconstitutional conditions,' the government may not require a person to give up a constitutional right ... in ex-

---

**10.** We note at the outset that a defense of qualified immunity is not available for prospective injunctive relief. *Presbyterian Church (U.S.A.) v. United States*, 870 F.2d 518, 527 (9th Cir.1989) ("Qualified immunity is an affirmative defense to damage liability; it does not bar actions for declaratory or injunctive relief."). In this case, however, the injunctive relief sought by Vance is moot. In 1995, the Nevada Legislature amended the

inmate account statutes to eliminate the statutorily provided property right in interest, *see* Nev.Rev.Stat. 16 § 209.241(1) (2002) ("The provisions of this chapter do not create a right on behalf of any offender to any interest or income that accrues on the money in the prisoners' personal property fund."), and Vance does not allege that he is entitled to interest beyond 1995.

change for a discretionary benefit conferred by the government where the benefit sought has little or no relationship to the property." *Dolan v. City of Tigard,* 512 U.S. 374, 385, 114 S.Ct. 2309, 129 L.Ed.2d 304. "[E]ven in a prison setting, the Constitution places some limits on a State's authority to offer discretionary benefits in exchange for a waiver of constitutional rights." *Vignolo v. Miller,* 120 F.3d 1075, 1078 (9th Cir.1997). However, we are also cognizant that "[t]hose limits are finite, and we recognize that Nevada may have important countervailing interests in the efficient management of its prisons." *Id.*

■ Outside the prison walls, the Supreme Court has articulated an essential nexus/rough proportionality test to determine whether the conditioned waiver is unconstitutional, *see, e.g., Dolan,* 512 U.S. at 386, 114 S.Ct. 2309; *Nollan v. Cal. Coastal Comm'n,* 483 U.S. 825, 837, 107 S.Ct. 3141, 97 L.Ed.2d 677 (1987), but the Court has yet to address this issue in the prison context. Due to the particularities of confinement, inmates are not afforded the same level of constitutional protection as ordinary citizens. In *Turner v. Safley,* 482 U.S. 78, 89, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987), the Supreme Court held that although prisoners do not check their constitutional rights at the prison gates, a relaxed standard is used in determining the constitutionality of all prison regulations. *See also Washington v. Harper,* 494 U.S. 210, 224, 110 S.Ct. 1028, 108 L.Ed.2d 178 (1990) ("We made quite clear that the standard of review we adopted in *Turner* applies to all circumstances in which the needs of prison administration implicate constitutional rights."). Thus, "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid

if it is reasonably related to legitimate penological interests." *Id.; cf. Pickering v. Bd. of Educ. of Township High School Dist. 205,* 391 U.S. 563, 568, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968) ("At the same time it cannot be gainsaid that the State has interests as an employer in regulating the speech of its employees that differ significantly from those it possesses in connection with regulation of the speech of the citizenry in general."). It is unclear in this situation whether *Turner* applies and the extent of deference owed to prison administrators.

■ Moreover, the Court's essential nexus/rough proportionality test is directed towards an unconstitutional condition of a Fifth Amendment takings claim, not towards a procedural due process claim. The standards for analyzing these two claims may not be the same: "[T]here is no reason to believe ... that so long as the regulation of property is at issue the standards for takings challenges, due process challenges, and equal protection challenges are identical." *Nollan,* 483 U.S. at 834 n. 3, 107 S.Ct. 3141. Vance did not cite, nor did we find, any case applying an unconstitutional condition analysis based on an underlying due process right.

The utter lack of precedent and standards is dispositive that the law concerning an unconstitutional condition predicated on a procedural due process claim in a prison setting was not clearly established. The prison officials are thus entitled to qualified immunity for Vance's unconstitutional conditions claims.[11]

## IV

### A

We cannot dispose of Vance's retaliation claims, however, so easily. To succeed,

---

**11.** Because prison officials here exceeded their statutory authority, this case does not present the issue of whether they could, if authorized by statute, condition prison employment on inmates' consenting to valid deductions, and we therefore need not reach it.

Vance must show that he was retaliated against for refusing to waive protected rights—here, his right to accrued net interest and his due process right to be free of unauthorized deductions. *See United States v. Conkins*, 9 F.3d 1377, 1382 (9th Cir.1993) ("Due process of law is violated when the government vindictively attempts to penalize a person for exercising a protected statutory or constitutional right."); *see Perry v. Sindermann*, 408 U.S. 593, 597, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972) (noting that officials cannot exact a waiver as an end-round "to 'produce a result which it could not command directly.' "); *see also Mt. Healthy City School Dist. Bd. of Ed. v. Doyle*, 429 U.S. 274, 283–84, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977); *Pratt v. Rowland*, 65 F.3d 802, 806 (9th Cir.1995); *cf. United States v. Goodwin*, 457 U.S. 368, 372, 102 S.Ct. 2485, 73 L.Ed.2d 74 (1982) ("For while an individual certainly may be penalized for violating the law, he just as certainly may not be punished for exercising a protected statutory or constitutional right."). There is no dispute that the prison administrators terminated Vance's employment because he refused to sign a fiscal agreement which waived his right to accrued interest and consented to unauthorized deductions by prison officials.

■■ ■■ Because this claim arises in prison, however, we must "afford appropriate deference and flexibility to prison officials in the evaluation of proffered legitimate penological reasons for conduct alleged to be retaliatory." *Pratt*, 65 F.3d at 807 (internal quotation omitted). Specifically, the prison administrators cannot be held liable unless "[their] retaliatory action did not advance legitimate goals of the correctional institution or was not tailored narrowly enough to achieve such goals." *Id.* at 806 (quoting *Rizzo v. Dawson*, 778 F.2d 527, 532 (9th Cir.1985)).

■■ Here, the prison administrators have failed to establish a legitimate goal. While undoubtedly they have an interest in recouping costs and maintaining an efficient prison system, such interest does not extend to avoiding the limits placed upon them by the state legislature and failing to provide constitutionally adequate procedural protections. We conclude that the prison administrators unconstitutionally retaliated against Vance for refusing to waive his right to accrued net interest and to consent to the use of unauthorized deductions.

#### B

But we must return to the question of qualified immunity.[12] Prior to 1994, we had clearly held that the Nevada statutes provide inmates a due process right to accrued interest and to prohibit statutorily unauthorized deductions. *Tellis*, 5 F.3d at 1317 (holding that NDOP's failure to pay interest violated inmates' due process); *Piatt v. MacDougall*, 773 F.2d 1032 (9th Cir.1985) (holding where state statute provides inmates right to compensation, state cannot deny compensation without due process); *Quick v. Jones*, 754 F.2d 1521, 1523 (9th Cir.1985) (holding failure to follow correct state law procedures violates due process of law); *Turner v. Nev. Bd. of State Prison Commrs.*, 624 F.Supp. 318,

---

12. The district court reasoned that because it erred in dismissing the lawsuit, certainly it was reasonable that prison officials, who are not expected to have the in-depth knowledge of the courts, did not know their actions violated the Constitution. This application is incorrect. To permit a *mistake* of law by the district court to determine conclusively the state of the law punishes, without recourse, plaintiffs for the court's error. In a similar context, the Supreme Court rejected such an argument. *See Malley v. Briggs*, 475 U.S. 335, 345–46, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986) (holding that magistrate's mistake does not preclude officers' liability for unreasonable reliance on warrant). We refuse to do so here as well.

320–22 (D.Nev.1985) (holding due process prohibited unauthorized maintenance deductions from inmates' paychecks under Nevada law). There is little doubt that a reasonable officer would have known that it could not directly make such deductions without further authority.[13]

Although Vance's retaliation claim is similar to his unconstitutional condition claim, our past precedent is much more developed in this area. The prison administrators claim that we have never held that a prison could not retaliate if inmates *refused to waive* a constitutional right. Instead, they contend we have held that prisons were prohibited from retaliation only if inmates *affirmatively exercised* a constitutional right. In the due process context, this is a distinction without a difference: the inmate has a right to receive his property unless constitutionally adequate process is provided. In this case, moreover, inmates had a right to be free from unauthorized deductions.

■ Although there was no precedent specifically on point for the due process claim, our precedent is clear that prison officials could not retaliate against inmates for the exercise of their constitutional rights. In 1995, we held that our law regarding retaliation against inmates was clearly established for qualified immunity purposes, *see Schroeder v. McDonald,* 55 F.3d 454, 461 (9th Cir.1995) (holding that prohibition against retaliatory punishment was clearly established law) and we do so again here. The law was clear enough to place prison administrators on notice that their conduct would violate Vance's constitutional rights.[14] *See Hope v. Pelzer,* 536 U.S. 730, 122 S.Ct. 2508, 2515–16, 153 L.Ed.2d 666 (2002).

Under the facts of this case, we cannot conclude that the prison officials are entitled to qualified immunity for Vance's termination. NDOP had fair notice that it could not retaliate against inmates for exercising their constitutional rights, and was sufficiently aware that an underlying due process right was implicated. Yet when Vance and Johnson refused to sign the fiscal agreement, they were fired. No reasonable official in such a position would have concluded that his or her actions were lawful.

Because there are no factual disputes regarding why the prison officials terminated their employment, Vance and Johnson are entitled to summary judgment on their unconstitutional retaliation claim.[15]

---

**13.** NDOP argues that *Washlefske v. Winston,* 234 F.3d 179, 185–86 (4th Cir.2000), casts doubt on the clarity of our precedent. Its reliance, however, is misplaced. While *Washlefske* disagrees with *Schneider,* 151 F.3d at 1199–1201, which held that the Constitution creates a constitutionally protected property interest in accrued interest on inmate trust accounts, it says nothing about statutorily created interests. Moreover, our precedent has never faltered with regard to *Schneider's* holding. Contrary to NDOP's assertion, *Washlefske* did nothing to upset our precedent.

**14.** The appellees also rely upon the fact that they sought legal advice from the Nevada Attorney General's office regarding the constitutionality of the fiscal agreements. While unfortunate that the prison administrators received misguided advice from the attorney general's office, it does not per se protect the officials from suit. *Stevens v. Rose,* 298 F.3d 880, 884 (9th Cir.2002). It is, however, considered evidence of good faith with regard to a qualified immunity analysis. *Id.; cf. Los Angeles Police Protective League v. Gates,* 907 F.2d 879, 888 (9th Cir.1990) (reasonable reliance on advice of counsel militates in favor of immunity finding).

**15.** Because we conclude that the prison officials unconstitutionally retaliated against Vance, we need not address whether the Nevada Revised Statutes created a property interest in the inmate accounts themselves and whether such a right prohibits prison officials from seeking a waiver of such deductions. Our decision already grants Vance and Johnson the relief which they sought from us.

V

For the foregoing reasons, the judgment of the district court is

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.

Moreover, there is no indication that the prison officials actually made such deductions in this case.