**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

TONY LAVAN; CATERIUS SMITH;
WILLIE VASSIE; ERNEST SEYMORE;
LAMOEN HALL; SHAMAL
BALLANTINE; BYRON REESE;
REGINALD WILSON,
              *Plaintiffs-Appellees,*

              v.

CITY OF LOS ANGELES,
              *Defendant-Appellant.*

No. 11-56253

D.C. No.
2:11-cv-02874-
PSG-AJW

OPINION

Appeal from the United States District Court
for the Central District of California
Philip S. Gutierrez, District Judge, Presiding

Argued and Submitted
February 8, 2012—Pasadena, California

Filed September 5, 2012

Before: Stephen Reinhardt, Kim McLane Wardlaw, and
Consuelo M. Callahan, Circuit Judges.

Opinion by Judge Wardlaw;
Dissent by Judge Callahan

## COUNSEL

Carmen A. Trutanich, City Attorney, and Amy Jo Field, Deputy City Attorney, Los Angeles, California, for the defendant-appellant.

Carol A. Sobel, Law Office of Carol A. Sobel, Santa Monica, California, for the plaintiffs-appellees.

## OPINION

WARDLAW, Circuit Judge:

Appellees, nine homeless individuals living in the "Skid Row" district of Los Angeles, charge that the City of Los Angeles (the "City") violated their Fourth and Fourteenth Amendment rights by seizing and immediately destroying their unabandoned personal possessions, temporarily left on public sidewalks while Appellees attended to necessary tasks such as eating, showering, and using restrooms. Finding a strong likelihood of success on the merits of these claims, the district court enjoined the City from confiscating and summarily destroying unabandoned property in Skid Row. The narrow injunction bars the City from:

> 1. Seizing property in Skid Row absent an objectively reasonable belief that it is abandoned, presents

an immediate threat to public health or safety, or is evidence of a crime, or contraband; and

2. Absent an immediate threat to public health or safety, destruction of said seized property without maintaining it in a secure location for a period of less than 90 days.

*Lavan v. City of Los Angeles*, 797 F. Supp. 2d 1005, 1020 (C.D. Cal. 2011).

The district court expanded upon the great leeway the City retains to protect public health and safety, noting: "The City [is] able to lawfully seize and detain property, as well as remove hazardous debris and other trash; issuance of the injunction . . . merely prevent[s the City] from *unlawfully* seizing and destroying personal property that is not abandoned without providing any meaningful notice and opportunity to be heard." *Id.* at 1019.

In this appeal, the City does not challenge the scope of the injunction, nor does it ask us to modify its terms; instead, the City argues only that the district court applied the wrong legal standard in evaluating Appellees' claims.[1] We conclude that the Fourth and Fourteenth Amendments protect homeless persons from government seizure and summary destruction of

---

[1]Public critics of the district court's ruling have mischaracterized both the breadth of the district court's order and the substance of the City's appeal. *See, e.g.*, Carol Schatz, "Enabling homelessness on L.A.'s skid row," *L.A. Times*, April 9, 2012; Estela Lopez, "Skid row: Hoarding trash on sidewalks isn't a right," *L.A. Times*, Feb. 28, 2012, *available at* http://opinion.latimes.com/opinionla/2012/02/skid-row-trash-sidewalks-blowback.html. The injunction does not require the City to allow hazardous debris to remain on Skid Row, nor does the City quibble with the contours of the order. Rather, the City seeks a broad ruling that it may seize and immediately destroy any personal possessions, including medications, legal documents, family photographs, and bicycles, that are left momentarily unattended in violation of a municipal ordinance.

their unabandoned, but momentarily unattended, personal property.

## I. FACTS AND PROCEDURAL BACKGROUND

The facts underlying this appeal are largely undisputed.[2] Appellees are homeless persons living on the streets of the Skid Row district of Los Angeles. Skid Row's inhabitants include the highest concentration of homeless persons in the City of Los Angeles; this concentration has only increased in recent years.[3] *See* Los Angeles Homeless Services Authority, 2011 Greater Los Angeles Homeless Count Report, *available at* http://www.lahsa.org/docs/2011-Homeless-Count/HC11-Detailed-Geography-Report-FINAL.PDF. Appellees occupy the sidewalks of Skid Row pursuant to a settlement agreement we approved in 2007. *See Jones v. City of Los Angeles*, 444 F.3d 1118 (9th Cir. 2006), *vacated due to settlement*, 505 F.3d 1006 (9th Cir. 2007). The settlement agreement limits the City's ability to arrest homeless persons for sleeping, sitting, or standing on public streets until the City constructs 1250 units of permanent supportive housing for the chronically homeless, at least 50 percent of which must be located within Skid Row or greater downtown Los Angeles. *See* Settlement Agreement, *Jones v. City of Los Angeles*, No. 03-CV-01142 (C.D. Cal. Sept. 15, 2008).

Like many of Skid Row's homeless residents, Appellees stored their personal possessions—including personal identification documents, birth certificates, medications, family memorabilia, toiletries, cell phones, sleeping bags and blankets—in mobile containers provided to homeless persons

---

[2]While the City disputed many facts before the district court, it "do[es] not challenge the district court's factual findings" in this appeal.

[3]A more comprehensive description of the circumstances surrounding the lives of homeless persons living on Skid Row is set forth in *Jones v. City of Los Angeles*, 444 F.3d 1118, 1121-23 (9th Cir. 2006), *vacated due to settlement*, 505 F.3d 1006 (9th Cir. 2007).

by social service organizations. Appellees Tony Lavan, Caterius Smith, Willie Vassie, Shamal Ballantine, and Reginald Wilson packed their possessions in EDAR mobile shelters.[4] Appellees Ernest Seymore, Lamoen Hall, and Byron Reese kept their possessions in distinctive carts provided by the "Hippie Kitchen," a soup kitchen run by the Los Angeles Catholic Worker.[5]

On separate occasions between February 6, 2011 and March 17, 2011, Appellees stepped away from their personal property, leaving it on the sidewalks, to perform necessary tasks such as showering, eating, using restrooms, or attending court. Appellees had not abandoned their property, but City employees nonetheless seized and summarily destroyed Appellees' EDARs and carts, thereby permanently depriving Appellees of possessions ranging from personal identification documents and family memorabilia to portable electronics, blankets, and shelters. *See Lavan*, 797 F. Supp. 2d at 1013-14. The City did not have a good-faith belief that Appellees' possessions were abandoned when it destroyed them. Indeed, on a number of the occasions when the City seized Appellees' possessions, Appellees and other persons were present, explained to City employees that the property was not abandoned, and implored the City not to destroy it. *Id.* at 1013.

---

[4]EDARs are small, collapsible mobile shelters provided to homeless persons by Everyone Deserves a Roof, a nonprofit organization. EDARs are intended to address the chronic shortage of housing faced by homeless persons in Los Angeles. Former Los Angeles City Mayor Richard Riordan spent the night of Saturday, November 6, 2010 in an EDAR on Skid Row to demonstrate how the shelters could be used by the homeless population residing there. *See* http://losangeles.cbslocal.com/2010/11/06/richard-riordan-volunteers-to-spend-night-with-homeless/.

[5]The Los Angeles Catholic Worker is a lay organization founded in 1970 to aid the poor and homeless of Skid Row. The organization operates a soup kitchen and hospitality house for the homeless, and provides meals, blankets, raincoats, and carts to homeless persons. *See generally* Jeff Dietrich, "Homeless enablers — and proud of it," *L.A. Times*, April 16, 2012, *available at* http://www.latimes.com/news/opinion/opinion-la/la-ol-homeless-skidrow-blowback-20120413,0,2199450.story.

Although "the City was in fact notified that the property belonged to Lamoen Hall and others, . . . when attempts to retrieve the property were made, the City took it and destroyed it nevertheless." *Id.* at 1014.

The City does not deny that it has a policy and practice of seizing and destroying homeless persons' unabandoned possessions. Nor is the practice new: The City was previously enjoined from engaging in the precise conduct at issue in this appeal. *See Justin v. City of Los Angeles*, No. 00-CV-12352, 2000 WL 1808426, at *13 (C.D. Cal. Dec. 5, 2000) (granting a temporary restraining order barring the City from, among other things, "[c]onfiscating the personal property of the homeless when it has not been abandoned and destroying it without notice"). The City maintains, however, that its seizure and disposal of items is authorized pursuant to its enforcement of Los Angeles Municipal Code ("LAMC") § 56.11, a local ordinance that provides that "[n]o person shall leave or permit to remain any merchandise, baggage or any article of personal property upon any parkway or sidewalk."

On April 5, 2011, Appellees sued the City under 42 U.S.C. § 1983, claiming that the City's practice of summarily confiscating and destroying the unabandoned possessions of homeless persons living on Skid Row violated the Fourth, Fifth, and Fourteenth Amendments of the United States Constitution. On April 18, 2011, Appellees filed an ex parte application for a temporary restraining order (the "TRO"), seeking an injunction preventing the City from seizing and destroying Appellees' possessions without notice.

On April 22, 2011, the district court granted Appellees' application for the TRO, concluding that "Plaintiffs have sufficiently established a likelihood of success on the merits for, at the least, their Fourth Amendment and Fourteenth Amendment claims against the City," that the City's conduct, unless enjoined, would irreparably injure Plaintiffs, and that the TRO served the public interest, as it allowed the City to "lawfully

seize and detain property, as opposed to unlawfully seizing and immediately destroying property." *Lavan v. City of Los Angeles*, No. 11-CV-2874, 2011 WL 1533070, at *5-6 (C.D. Cal. Apr. 22, 2011). The district court fashioned an order encompassing all unabandoned property on Skid Row, reasoning that "it would likely be impossible for the City to determine whose property is being confiscated—i.e. whether it is one of the named Plaintiffs or another homeless person." *Id.* at *4. The terms of the TRO bar the City from:

> 1. Seizing property in Skid Row absent an objectively reasonable belief that it is abandoned, presents an immediate threat to public health or safety, or is evidence of a crime, or contraband; and

> 2. Absent an immediate threat to public health or safety, destruction of said seized property without maintaining it in a secure location for a period of less than 90 days.

*Id.* at *7. The City is also "directed to leave a notice in a prominent place for any property taken on the belief that it is abandoned, including advising where the property is being kept and when it may be claimed by the rightful owner." *Id.*

On June 23, 2011, the district court issued a preliminary injunction (the "Injunction") on the same terms as the TRO. After weighing the evidence before it, the district court found that the Appellees had "clearly shown that they will likely succeed in establishing that the City seized and destroyed property that it knew was not abandoned," 797 F. Supp. 2d at 1014-1015, and held that Appellees had shown a strong likelihood of success on the merits of their claims that the City violated their Fourth Amendment and Fourteenth Amendment rights, *id.* at 1016, 1019. Explaining that Appellees "have a legitimate expectation of privacy in their property," the district court further held that "[t]he property of the homeless is entitled to Fourth Amendment protection." *Id.* at 1011, 1016.

The district court also concluded that Appellees' "personal possessions, perhaps representing everything they own, must be considered 'property' for purposes of [Fourteenth Amendment] due process analysis." *Id.* at 1016. Because Appellees had shown a strong likelihood of success on their claims that the seizure and destruction of their property was neither reasonable under the Fourth Amendment nor comported with procedural due process, the district court enjoined the City from continuing to engage in its practice of summarily destroying Appellees' unattended personal belongings.

The district court made clear that under the terms of the injunction, "[t]he City [is] able to lawfully seize and detain property, as well as remove hazardous debris and other trash." *Id.* at 1019. It emphasized that "issuance of the injunction . . . merely prevent[s the City] from unlawfully seizing and destroying personal property that is not abandoned without providing any meaningful notice and opportunity to be heard." *Id.* This appeal followed.

## II.   JURISDICTION AND STANDARD OF REVIEW

We have jurisdiction over the district court's entry of a preliminary injunction under 28 U.S.C. § 1292(a)(1), and review the grant of a preliminary injunction for an abuse of discretion. *Sw. Voter Registration Educ. Project v. Shelley*, 344 F.3d 914, 918 (9th Cir. 2003) (en banc) (per curiam). "A preliminary 'injunction will be reversed only if the district court relied on an erroneous legal premise or abused its discretion.' " *Gregorio T. v. Wilson*, 59 F.3d 1002, 1004 (9th Cir. 1995) (quoting *Sports Form, Inc. v. United Press Int'l*, 686 F.2d 750, 752 (9th Cir. 1982)). In reviewing the grant of a preliminary injunction, "we do not review the underlying merits of the case." *Id.*

## III.   DISCUSSION

The City's only argument on appeal is that its seizure and destruction of Appellees' unabandoned property implicates

neither the Fourth nor the Fourteenth Amendment. Therefore, the City claims, the district court relied on erroneous legal premises in finding a likelihood of success on the merits. Because the unabandoned property of homeless persons is not beyond the reach of the protections enshrined in the Fourth and Fourteenth Amendments, we affirm the district court.

A. *The Fourth Amendment's Protection Against Unreasonable Seizures*

The City argues that the Fourth Amendment does not protect Appellees from the summary seizure and destruction of their unabandoned personal property. It bases its entire theory on its view that Appellees have no legitimate expectation of privacy in property left unattended on a public sidewalk in violation of LAMC § 56.11. Relying on Justice Harlan's concurrence in *Katz v. United States*, the City asserts that the Fourth Amendment protects only persons who have both a subjectively and an objectively reasonable expectation of privacy in their property. 389 U.S. 347, 361 (1967) (Harlan, J. concurring). As the Supreme Court has recently made very clear in *United States v. Jones*, 565 U. S. ____, slip op. at 5 (2012), however, the City's view entirely misapprehends the appropriate Fourth Amendment inquiry, as well as the fundamental nature of the interests it protects. The reasonableness of Appellees' expectation of privacy is irrelevant as to the question before us: whether the Fourth Amendment protects Appellees' unabandoned property from unreasonable seizures.

**[1]** The Fourth Amendment "protects two types of expectations, one involving 'searches,' the other 'seizures.' A 'search' occurs when the government intrudes upon an expectation of privacy that society is prepared to consider reasonable. A 'seizure' of property occurs when there is some meaningful interference with an individual's possessory interests in that property." *United States v. Jacobsen*, 466 U.S. 109, 113 (1984). Appellees need not show a reasonable expectation of privacy to enjoy the protection of the Fourth

Amendment against *seizures* of their unabandoned property. Although the district court determined that Appellees had a reasonable expectation of privacy in their EDARs and carts, we need not decide that question because the constitutional standard is whether there was "some meaningful interference" with Plaintiffs' possessory interest in the property.[6]

**[2]** To the extent that Justice Harlan's *Katz* concurrence generated the mistaken impression that the Fourth Amendment protects only privacy interests, the Supreme Court has clarified that the Fourth Amendment protects possessory and

---

[6]Although the question is not before us, we note that Appellees' expectation of privacy in their unabandoned shelters and effects may well have been reasonable. When determining whether an expectation of privacy is reasonable, "we must keep in mind that the test of legitimacy is . . . whether the government's intrusion infringes upon the personal and societal values protected by the Fourth Amendment." *California v. Ciraolo*, 476 U.S. 207, 212 (1986) (quotation omitted). In *Silverman v. United States*, the Court explained the "very core" of the Fourth Amendment:

> A man can still control a small part of his environment, his house; he can retreat thence from outsiders, secure in the knowledge that they cannot get at him without disobeying the Constitution. That is still a sizable hunk of liberty—worth protecting from encroachment. A sane, decent, civilized society must provide some such oasis, some shelter from public scrutiny, some insulated enclosure, some enclave, some inviolate place which is a man's castle.

365 U.S. 505, 511 n.4 (1961) (quoting *United States v. On Lee*, 193 F.2d 306, 315-16 (2d Cir. 1951) (Frank, J., dissenting)). As our sane, decent, civilized society has failed to afford more of an oasis, shelter, or castle for the homeless of Skid Row than their EDARs, it is in keeping with the Fourth Amendment's "very core" for the same society to recognize as reasonable homeless persons' expectation that their EDARs are not beyond the reach of the Fourth Amendment. *See generally State v. Mooney*, 588 A.2d 145, 161 (Conn. 1991) ("The interior of [the homeless defendant's duffel bag and cardboard box] represented, in effect, the defendant's last shred of privacy from the prying eyes of outsiders, including the police. Our notions of custom and civility, and our code of values, would include some measure of respect for that shred of privacy, and would recognize its assertion as reasonable under the circumstances of this case.").

liberty interests even when privacy rights are not implicated. *Soldal v. Cook County*, 506 U.S. 506 U.S. 56, 63-64 & n.8 (1992). As the Court explained, while *Katz* and its progeny may have shifted the emphasis in Fourth Amendment law from property to privacy, "[t]here was no suggestion that this shift in emphasis had snuffed out the previously recognized protection for property under the Fourth Amendment." *Id.* at 64. Indeed, even in the *search* context, where privacy is the principal protected interest, the Supreme Court has recently reiterated that a reasonable expectation of privacy is not required for Fourth Amendment protections to apply because "Fourth Amendment rights do not rise or fall with the *Katz* formulation." *Jones*, 565 U. S. at ____, slip op. at 5.

Following *Soldal*, we recognized that a reasonable expectation of privacy is not required to trigger Fourth Amendment protection against seizures. In *Miranda v. City of Cornelius*, 429 F.3d 858, 862 n.2 (9th Cir. 2005), for example, the plaintiffs admitted that they had no reasonable expectation of privacy in their parked car, but they nevertheless challenged the city's impoundment of the vehicle as an unreasonable seizure. We held that the seizure was subject to the Fourth Amendment's reasonableness standard because "[t]he Fourth Amendment protects against unreasonable interferences in property interests regardless of whether there is an invasion of privacy." *Id.* at 862 (citing *Soldal*). Other circuits are in accord. *See United States v. Paige*, 136 F.3d 1012, 1021 (5th Cir. 1998) ("The Supreme Court recently made clear that the protection afforded by the Fourth Amendment extends to an individual's possessory interests in property, even if his expectation of privacy in that property has been completely extinguished.") (citing *Soldal*)); *Lenz v. Winburn*, 51 F.3d 1540, 1550 n.10 (11th Cir. 1995) ("It is true that a possessory interest is all that is needed for the Fourth Amendment's reasonableness requirement to apply to a *seizure*.") (citing *Soldal*); *Bonds v. Cox*, 20 F.3d 697, 702 (6th Cir. 1994) ("[O]ur finding that Bonds had no reasonable expectation of privacy in the house at 4174 Dunn Avenue does not affect our conclu-

sion that Bonds has standing to challenge the seizure of her property.”).

Thus the dissent’s nearly exclusive focus on the *Katz* “reasonable expectation of privacy” standard is misguided. We need not make any conclusion as to expectations of privacy because that is not the standard applicable to a “seizure” analysis. Moreover, as Justice Scalia made abundantly clear in *Jones*, even in the “search” context, the *Katz* test “did not narrow the Fourth Amendment’s scope,” *Jones*, 565 U. S. at ____, slip op. at 7, but was “*added to*, not *substituted for*, the common-law trespassory test.” *Id.* at ____, slip op. at 8 (emphasis in original). Therefore, even if we were to analyze the reasonableness of the City’s *search* of Plaintiffs’ belongings, we would still apply the Fourth Amendment’s requirement that the search be reasonable—irrespective of any privacy interest—because the City searched Plaintiffs’ “persons, houses, papers, [or] effects,” *id.* at 950. *See U.S. v. Duenas*, Nos. 09-10492, 09-10496, 2012 WL 3517605, at *6 (9th Cir. Aug. 16, 2012) (explaining the relationship between the *Katz* “expectation of privacy” test and the traditional scope of the Fourth Amendment).[7]

**[3]** Even if we were to assume, as the City maintains, that Appellees violated LAMC § 56.11 by momentarily leaving their unabandoned property on Skid Row sidewalks, the seizure and destruction of Appellees’ property remains subject to the Fourth Amendment’s reasonableness requirement. Violation of a City ordinance does not vitiate the Fourth Amendment’s protection of one’s property. Were it otherwise, the government could seize and destroy any illegally parked car

---

[7]The assumption that the *Katz* privacy analysis applies in the seizure context, and that it is a standard that must be met in every Fourth Amendment search or seizure case, permeates the dissent’s reasoning. See, for example, Section IIB of the dissent. Because the Supreme Court soundly rejected that assumption in *Jones*, the dissent’s reasoning, which essentially echoes the City’s, is, at best, highly questionable.

or unlawfully unattended dog without implicating the Fourth Amendment.[8]

Indeed, the Supreme Court has recognized protected possessory interests even in contraband: In *United States v. Jacobsen*, for example, the Court found that the government's testing of illegal cocaine (which resulted in the destruction of a portion of the cocaine) was a "seizure" that "affect[ed] respondents' possessory interests protected by the [Fourth] Amendment, since by destroying a quantity of the powder it converted what had been only a temporary deprivation of possessory interests into a permanent one." 466 U.S. at 124-125. Moreover, the Fourth Amendment protected the cocaine from unreasonable seizures despite the lack of any reasonable expectation of privacy in concealing the contraband nature of the powder. *See id.* at 123 ("Congress has decided . . . to treat the interest in 'privately' possessing cocaine as illegitimate; thus governmental conduct that can reveal whether a substance is cocaine . . . compromises no legitimate privacy interest.").

---

[8]The dissent's analogy between the factual scenario presented by this case and that of a government official's seizure of a traveler's unattended bag in an airport terminal or train station is inapt. The City has not challenged the district court's clearly correct conclusion that the City's immediate destruction of Plaintiffs' unabandoned property was unreasonable. Even if the City had raised this issue on appeal, however, the dissent's suggestion that the government has the same interest in destroying EDARs and homeless persons' family photographs and identification papers found on public sidewalks as it does in destroying suspicious unattended luggage discovered in transportation hubs fails to recognize the unique nature of the security risks that exist at airports and train stations. The Fourth Amendment remains applicable at such transportation hubs; the nature of the security risks there (and, similarly, at border crossings) gives the government broader leeway in the reasonableness standard. As far as we are aware, Skid Row has never been the target of a terrorist attack, and the City makes no argument that the property it destroyed was suspicious or threatening. And, in any event, the very injunction that the City is challenging in this appeal expressly allows the City to act *immediately* to remove and destroy threats to public health or safety.

**[4]** Here, by seizing and destroying Appellees' unabandoned legal papers, shelters, and personal effects, the City meaningfully interfered with Appellees' possessory interests in that property. No more is necessary to trigger the Fourth Amendment's reasonableness requirement. Although the district court based its holding on a finding that Appellees had a reasonable expectation of privacy in their seized personal effects—a finding that is unnecessary to the proper analysis in this case—it correctly held that the Fourth Amendment's protections extend to Appellees' unabandoned property. The court therefore applied the proper legal standard for determining whether Appellees had shown a likelihood of success on the merits: "The question then becomes whether the City, in seizing [Appellees'] property, acted reasonably under the Fourth Amendment." *Lavan*, 797 F. Supp. 2d at 1013. Thus, the district court properly subjected the City's actions to the Fourth Amendment's reasonableness requirement, even if the City was acting to enforce the prohibitions in LAMC § 56.11. *See Miranda v. City of Cornelius*, 429 F.3d at 864 ("We begin with the premise, apparently not recognized by the Defendants, that the decision to impound pursuant to the authority of a city ordinance and state statute does not, in and of itself, determine the reasonableness of the seizure under the Fourth Amendment . . . .").

The district court properly balanced the invasion of Appellees' possessory interests in their personal belongings against the City's reasons for taking the property to conclude that Appellees demonstrated a strong likelihood of success on the merits of their claim that by collecting and destroying Appellees' property on the spot, the City acted unreasonably in violation of the Fourth Amendment. The district court was correct in concluding that even if the seizure of the property would have been deemed reasonable had the City held it for return to its owner instead of immediately destroying it, the City's destruction of the property rendered the seizure unreasonable. *See Jacobsen*, 466 U.S. at 124-125 ("[A] seizure lawful at its inception can nevertheless violate the Fourth

Amendment because its manner of execution unreasonably infringes possessory interests protected by the Fourth Amendment's prohibition on 'unreasonable seizures.' ''); *see also San Jose Charter of Hells Angels Motorcycle Club v. San Jose*, 402 F.3d 962, 975 (9th Cir. 2005) ("The destruction of property by state officials poses as much of a threat, if not more, to people's right to be secure in their effects as does the physical taking of them.") (internal quotation marks and citations omitted).

The City does not—and almost certainly could not—argue that its summary destruction of Appellees' family photographs, identification papers, portable electronics, and other property was reasonable under the Fourth Amendment; it has instead staked this appeal on the argument that the Fourth Amendment simply does not apply to the challenged seizures. We reject the City's invitation to impose this unprecedented limit on the Fourth Amendment's guarantees.

### B.   The Fourteenth Amendment's Due Process Requirement

**[5]** The Fourteenth Amendment provides that no State shall "deprive any person of life, liberty, or property, without due process of law." U.S. CONST. amend. XIV, § 1. "Any significant taking of property by the State is within the purview of the Due Process Clause." *Fuentes v. Shevin*, 407 U.S. 67, 86 (1972). "Application of this prohibition requires the familiar two-stage analysis: We must first ask whether the asserted individual interests are encompassed within the Fourteenth Amendment's protection of 'life, liberty or property'; if protected interests are implicated, we then must decide what procedures constitute 'due process of law.' '' *Ingraham v. Wright*, 430 U.S. 651, 672 (1977).

**[6]** Let us be clear about the property interest at stake in this appeal: The district court did not recognize, and we do not now address, the existence of a constitutionally-protected

property right to leave possessions unattended on public side-walks. Instead, the district court correctly recognized that this case concerns the most basic of property interests encom-passed by the due process clause: Appellees' interest in the continued ownership of their personal possessions.

The City argues that the district court erred in holding that Appellees' "personal possessions, perhaps representing every-thing they own, must be considered 'property' for purposes of . . . due process analysis," *Lavan*, 797 F. Supp. 2d at 1016. The City maintains that "no constitutionally protected prop-erty interest is implicated by the City's purported conduct" because "there is no law establishing an individual's constitu-tionally protected property interest in unattended personal property left illegally on the public sidewalk." Therefore, the City contends, no process is required before the City perma-nently deprives Appellees of their unattended possessions.

**[7]** To determine whether Appellees have a protected prop-erty interest in the continued ownership of their unattended possessions, we look to "existing rules or understandings that stem from an independent source such as state law-rules or understandings." *Board of Regents v. Roth*, 408 U.S. 564, 577 (1972), While "[t]he Court has . . . made clear that the prop-erty interests protected by procedural due process extend well beyond actual ownership of real estate, chattels, or money," this appeal concerns only the core property interest that derives from actual ownership of chattels. *Id.* at 571-572. Cal-ifornia law recognizes the right of ownership of personal property, a right that is held by "[a]ny person, whether citizen or alien." Cal. Civ. Code §§ 655, 663, 671. It is undisputed that Appellees owned their possessions and had not aban-doned them; therefore, Appellees maintained a protected interest in their personal property. *Cf. Nevada Dept. of Corr. v. Greene*, 648 F.3d 1014, 1019 (9th Cir. 2011) ("Nevada rec-ognizes 'personal property,' which includes 'money, goods, [and] chattels.' *See* Nev. Rev. Stat. §§ 10.045, 10.065. As

Downs's typewriter constituted a chattel, Downs had a property interest in it.").

**[8]** As we have repeatedly made clear, "[t]he government may not take property like a thief in the night; rather, it must announce its intentions and give the property owner a chance to argue against the taking." *Clement v. City of Glendale*, 518 F.3d 1090, 1093 (9th Cir. 2008). This simple rule holds regardless of whether the property in question is an Escalade or an EDAR, a Cadillac or a cart. The City demonstrates that it completely misunderstands the role of due process by its contrary suggestion that homeless persons instantly and permanently lose any protected property interest in their possessions by leaving them momentarily unattended in violation of a municipal ordinance. As the district court recognized, the logic of the City's suggestion would also allow it to seize and destroy cars parked in no-parking zones left momentarily unattended.

Even if Appellees had violated a city ordinance, their previously-recognized property interest is not thereby eliminated. *See Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 434 (1982) ("[T]he State may not finally destroy a property interest without first giving the putative owner an opportunity to present his claim of entitlement."). Even if the City had seized Appellees' possessions in accordance with the Fourth Amendment, which it did not, due process requires law enforcement "to take reasonable steps to give notice that the property has been taken so the owner can pursue available remedies for its return." *City of West Covina v. Perkins*, 525 U.S. 234, 240 (1999). And even if LAMC § 56.11 provided for forfeiture of property, which it does not, the City is required to provide procedural protections before permanently depriving Appellees of their possessions. *See Greene*, 648 F.3d at 1019 ("An agency . . . violates the Due Process Clause of the Fourteenth Amendment when it prescribes and enforces forfeitures of property '[w]ithout underlying [statutory] authority and com-

petent procedural protections.' ") (quoting *Vance v. Barrett*, 345 F.3d 1083, 1090 (9th Cir. 2003)).

**[9]** Because homeless persons' unabandoned possessions are "property" within the meaning of the Fourteenth Amendment, the City must comport with the requirements of the Fourteenth Amendment's due process clause if it wishes to take and destroy them. *See United States v. James Daniel Good Real Prop.*, 510 U.S. 43, 48 (1993) ("Our precedents establish the general rule that individuals must receive notice and an opportunity to be heard before the Government deprives them of property."). The City admits that it failed to provide any notice or opportunity to be heard for Tony Lavan and other Appellees before it seized and destroyed their property. The City's decision to forego any process before permanently depriving Appellees of protected property interests is especially troubling given the vulnerability of Skid Row's homeless residents: "For many of us, the loss of our personal effects may pose a minor inconvenience. However, . . . the loss can be devastating for the homeless." *Pottinger v. City of Miami*, 810 F. Supp. 1551, 1559 (S.D. Fla. 1992). The City does not argue, nor could it, that the district court erred in holding that the City's "practice of on-the-spot destruction of seized property . . . . presents an enormous risk of erroneous deprivation, which could likely be mitigated by certain safeguards such as adequate notice and a meaningful opportunity to be heard." *Lavan*, 797 F. Supp. 2d at 1017-18.

**[10]** We reject the City's suggestion that we create an exception to the requirements of due process for the belongings of homeless persons. The district court did not abuse its discretion when it found a likelihood of success on Appellees' Fourteenth Amendment claims, as the City admits it failed utterly to provide any meaningful opportunity to be heard before or after it seized and destroyed property belonging to Skid Row's homeless population.

## IV.  CONCLUSION

This appeal does not concern the power of the federal courts to constrain municipal governments from addressing the deep and pressing problem of mass homelessness or to otherwise fulfill their obligations to maintain public health and safety. In fact, this court would urge Los Angeles to do more to resolve that problem and to fulfill that obligation. Nor does this appeal concern any purported right to use public sidewalks as personal storage facilities. The City has instead asked us to declare that the unattended property of homeless persons is uniquely beyond the reach of the Constitution, so that the government may seize and destroy with impunity the worldly possessions of a vulnerable group in our society. Because even the most basic reading of our Constitution prohibits such a result, the City's appeal is **DENIED.**

---

CALLAHAN, Circuit Judge, dissenting:

I respectfully dissent. I disagree that Plaintiffs are likely to succeed on the merits of their claims that the City of Los Angeles (the "City") violated their protected interests under the Fourth Amendment and under the due process clause of the Fourteenth Amendment. The pivotal question under both Amendments is not whether Plaintiffs had a property interest in the items seized—they may very well have had such an interest—but whether that interest is one that society would recognize as reasonably worthy of protection where the personal property is left unattended on public sidewalks. Because under the due process standard, society does not recognize a property interest in unattended personal property left on public sidewalks, the City's health and safety concerns allow it to seize and dispose of such property.

In this case, Plaintiffs left their personal property unattended on the sidewalks. They did so despite the numerous

signs blanketing Skid Row that specifically warned that personal property found on the sidewalks in violation of the Los Angeles Municipal Code section 56.11 (the "Ordinance" or "LAMC § 56.11") would be seized and disposed of during scheduled clean-ups. The majority impermissibly stretches our Fourth Amendment jurisprudence to find that Plaintiffs had a protected interest in their unattended personal property. In addition, because Plaintiffs have not demonstrated a protected property interest, I would reverse the district court's ruling that Plaintiffs established a likelihood of success on the merits of their claim under the Fourteenth Amendment.

## I. Background

In order to combat the problem created by excessive accumulation of unattended personal property on the public sidewalks of the area in downtown Los Angeles commonly known as "Skid Row," the City conducts regular and scheduled street cleaning in accordance with the Ordinance. The Ordinance provides that: "No person shall leave or permit to remain any merchandise, baggage or any article of personal property upon any parkway or sidewalk." LAMC § 56.11. Pursuant to the Ordinance, the City posted approximately 73 signs throughout the Skid Row area warning that street cleaning would be conducted Monday through Friday between 8:00 a.m. and 11:00 a.m. and that any unattended property left at the location in violation of the Ordinance would be disposed of at the time of clean-up. These signs advised:

> Please take notice that Los Angeles Municipal Code section 56.11 prohibits leaving any merchandise, baggage or personal property on a public sidewalk. The City of Los Angeles has a regular clean-up of this area scheduled for Monday through Friday between 8:00 and 11:00 am. Any property left at or near this location at the time of this clean-up is subject to disposal by the City of Los Angeles.

In expressly providing notice about when the street cleaning will take place, the City allows Skid Row residents to prepare ahead of time for the cleaning by making sure that their personal property is either removed from the sidewalks or is attended. Additionally, there is a warehouse in Skid Row open to the public during regular business hours, which is sponsored by the Business Improvement District in the Central Division. This warehouse provides a location for people to store their personal property free of charge.

During the scheduled street clean-ups, the City workers and police escorts make an effort to remove only items that appear to have been abandoned, such as items that have remained in the same location for several days or items that pose a health and safety hazard, including rotting food, human fecal matter, and drug paraphernalia. Despite these efforts by the City to balance health and safety concerns with private property concerns, Plaintiffs allege that the City removed and immediately destroyed personal property that was not permanently abandoned but was temporarily left unattended. Plaintiffs claim that because they are homeless, they have no option but to leave their personal property unattended on public sidewalks during the regularly scheduled clean-ups in order to get food, shower, use the bathroom, obtain medical care and other private and government services, and go to work.[1] However,

___

[1]Although I sympathize with the plight of the homeless and believe that this is a problem that we must address as a society, a § 1983 action is not the proper vehicle for addressing this problem. The majority opinion focuses on the interests of the homeless in Skid Row who leave their property unattended and does not acknowledge the interests of the other people in Skid Row—homeless or otherwise—who must navigate a veritable maze of biohazards and trash as they go about their daily business. Certainly, the City is charged with protecting the health and safety of individuals who comply with the law but are forced to live in the unsanitary and unsafe conditions created by other residents. Those conditions include human waste, dead animals, and weapons. For example, during a recent clean-up, the City removed "278 hypodermic needles, 94 syringes, 60 razor blades, 10 knives, 11 items of drug paraphernalia," and "[t]wo 5-

Plaintiffs do not explain why they cannot make use of the free public storage warehouse or make arrangements for their property to be attended during the brief three-hour windows of scheduled clean-ups.

On April 5, 2011, Plaintiffs filed their class action complaint against the City under 42 U.S.C. § 1983, alleging violations of their Fourth and Fourteenth Amendment rights. On Plaintiffs' request, the district court then issued a temporary restraining order (the "TRO") and ordered the City to show cause as to why a preliminary and/or permanent injunction should not issue. On June 23, 2012, the district court issued the preliminary injunction. In issuing the injunction, the court made factual findings that the City was removing and disposing of not only "abandoned" property but also personal property that was "unattended but not abandoned." The district court found that Plaintiffs were likely to succeed on the merits of their Fourth and Fourteenth Amendment claims and enjoined the City from:

> 1. Seizing property in Skid Row absent an objectively reasonable belief that it is abandoned, presents an immediate threat to public health or safety, or is evidence of a crime, or contraband; and
>
> 2. Absent an immediate threat to public health or safety, destruction of said seized property without

gallon buckets of feces." *See* Alexandra Zavis, "Nearly 5 tons of trash collected in L.A. skid row sweep," *L.A. Times*, July 9, 2012, *available at* http://latimesblogs.latimes.com/lanow/2012/07/tons-of-trash-collected-in-la-skid-row-sweep.html. Although the City does not challenge the district court's rulings on the balance of hardships and advancement of the public interest under *Winter*, because of the City's duty to maintain clean and safe sidewalks, I would find that these factors weigh in the City's favor. *See Winter v. Natural Res. Def. Council*, 555 U.S. 7, 20-21 (2008) (concluding that the public interest, as advanced by the Navy, in conducting training exercises with active sonar in realistic conditions outweighed the interest in preventing possible injury to an unknown number of marine mammals).

> maintaining it in a secure location for a period of less than 90 days.

The court also directed the City to leave a notice in a prominent place for any property taken on the belief that it is abandoned, including advising where the property is being kept and when it may be claimed by the rightful owner.

On July 25, 2011, the City timely appealed the district court's order granting the preliminary injunction.

## II. Analysis

On appeal, the City does not challenge the district court's factual finding that it removes and disposes of personal property left unattended, but not abandoned, on the City sidewalks during its scheduled street cleanings. Although the majority focuses on the finding that the property was not abandoned, the fundamental issue is whether Plaintiffs relinquished their privacy and property interests by leaving their personal property unattended on public sidewalks in violation of the Ordinance and in spite of the warning signs.

### A. Standard of Review

We review a district court's decision granting a preliminary injunction for abuse of discretion. *Bay Area Addiction & Treatment, Inc. v. City of Antioch*, 179 F.3d 725, 730 (9th Cir. 1999). "In issuing a preliminary injunction, a district court abuses its discretion by basing its decision on either an erroneous legal standard or clearly erroneous factual findings." *Walczak v. EPL Prong, Inc.*, 198 F.3d 725, 730 (9th Cir. 1999). "A district court's decision is based on an erroneous legal standard if: (1) the court did not employ the appropriate legal standards that govern the issuance of a preliminary injunction; or (2) in applying the appropriate legal standards, the court misapprehends the law with respect to the underlying issues in the litigation." *Id.* (citing *Sports Form Inc. v.*

*United Press International, Inc.* 686 F.2d 750, 752 (9th Cir. 1982)).

## B.   Plaintiffs Lacked an Objectively Reasonable Expectation of Privacy in Their Unattended Personal Property under the Fourth Amendment.

"To invoke Fourth Amendment protection, Plaintiffs must have both a subjective and an objectively reasonable expectation of privacy." *Katz*, 389 U.S. at 361 (1967). Under *Katz*, it is not sufficient to have a property interest. There must also be an objectively reasonable expectation of privacy in that property interest. *Id.* In order to determine whether an expectation of privacy is reasonable, "*Katz* posits a two-part inquiry: first, has the individual manifested a subjective expectation of privacy in the object of the challenged search? Second, is society willing to recognize that expectation as reasonable?"[2] *California v. Ciraolo*, 476 U.S. 207, 211 (1986).

No circuit court has expanded the right to be free from unreasonable searches and seizures to a right to leave unattended personal property on public land in violation of a law prohibiting that conduct. The few cases that have addressed similar issues lead to the conclusion that Plaintiffs lacked an objective expectation of privacy that society recognizes as reasonable. These cases have consistently held that a person who unlawfully takes up temporary residence on public property without a permit or permission lacks an objectively reasonable expectation of privacy. *See, e.g., Church v. Jacobs,* 30 F.3d 1332, 1345 (11th Cir. 1994) ("The Constitution does not confer the right to trespass on public lands. Nor is there

---

[2]Plaintiffs, by leaving their personal property on the sidewalks unattended, raise doubts as to whether they "manifested a subjective expectation of privacy" under the first step of the *Katz* test. However, the City does not dispute the district court's finding that Plaintiffs had a subjective expectation of privacy in their personal property. Thus, I focus on the second step of the *Katz* test.

any constitutional right to store one's personal belongings on public lands."); *United States v. Ruckman*, 806 F.2d 1471, 1472 (10th Cir. 1986) (reasoning that a trespasser living in a cave on federally-owned land did not have an objectively reasonable expectation of privacy); *Amezquita v. Hernandez-Colon*, 518 F.2d 8, 11-12 (1st Cir. 1975) (concluding that squatters who unlawfully camped on public land did not have an objectively reasonable expectation of privacy for Fourth Amendment purposes). Further, we have similarly concluded that a trespasser on private state property did not have an objectively reasonable expectation of privacy. *Zimmerman v. Bishop Estate*, 25 F.3d 784, 787-88 (9th Cir. 1994).

Plaintiffs attempt to distinguish these cases by reasoning that they are not squatters or trespassers as they have a right to occupy the public sidewalks. Plaintiffs do have a right to use the public sidewalks, but this does not mean that they may leave personal property unattended on the sidewalk, particularly where the Ordinance prohibits it and multiple signs expressly warn the public that unattended personal property "is subject to disposal by the City of Los Angeles."[3] The issue is not whether Plaintiffs illegally occupied the sidewalks; they did not. However, like the plaintiffs in *Amezquita*, *Zimmerman*, and *Ruckman*, Plaintiffs violated the law. They left their personal property unattended on the City's sidewalks, in clear violation of the City's Ordinance prohibiting that conduct. *Amezquita*, *Zimmerman*, and *Ruckman* stand for the proposition that the unlawfulness of the plaintiffs' conduct negates the objective reasonableness of their expectation of privacy. In other words, by leaving their property unattended in violation of the City's Ordinance and in the face of express notice

---

[3]Plaintiffs assert that in several instances, the City seized personal belongings packed neatly in carts and despite the protests of persons on the scene. Perhaps the City erred in determining that the property was unattended, and accordingly may face some liability, but this does not mean that the City may not seize and immediately dispose of materials it reasonably determines to be unattended.

that their property would be removed during the scheduled clean-ups, Plaintiffs forfeited any privacy interest that society recognizes as objectively reasonable.

Despite this ample case law, the majority finds that Plaintiffs did not need to have a reasonable expectation of privacy. *See* Maj. Op. at 10584-86. In the majority's view, the problem with framing the Fourth Amendment question around whether the claimant had a "reasonable expectation of privacy" is that the Supreme Court, in *Soldal v. Cook County*, 506 U.S. 56, 64 (1992), clarified that *Katz* did not "snuff[ ] out the previously recognized protection for property under the Fourth Amendment." Maj. Op. at 10585. The majority asserts that *Katz* and its progeny were meant to expand the Fourth Amendment analysis to include consideration of privacy rights, in addition to property rights. *Id.* at 10584-85.

*Soldal* does not support Plaintiffs' professed expectation of privacy because Plaintiffs took actions that are, at a minimum, inconsistent with our society's reasonable expectations of privacy. In *Soldal*, the plaintiff's mobile home was seized while it was parked on mobile home park property, but because there was not yet a judicial order of eviction, it was parked there legally. *Soldal*, 506 U.S. at 60, 67-68. Thus, as a matter of law, the plaintiff there had yet to take any action that might relinquish his reasonable expectations of privacy. *Id.* However, here, Plaintiffs chose to leave their property unattended on public sidewalks despite being warned that their property would be seized during the limited hours of regularly scheduled street-cleanings. *Soldal* concerned the seizure of personal property that was *legally* parked in a mobile home area; whereas here, Plaintiffs left their property unattended in violation of the Ordinance prohibiting them from doing just that. In doing so, their expectation of privacy diminished below the level of privacy that society recognizes as reasonable.[4]

---

[4]If the City, in searching unattended personal property on its sidewalks, discovered illegal drugs or other evidence of criminal activity, the owner

The importance of determining whether Plaintiffs had an expectation of privacy that society recognizes as reasonable was recently reaffirmed by the Supreme Court in *United States v. Jones*: "We have embodied that preservation of past rights in our very definition of 'reasonable expectation of privacy' which we have said to be an expectation 'that has a source outside of the Fourth Amendment, either by reference to concepts of real or personal property law or to understandings that are recognized and permitted by society.' " 132 S. Ct. 945, 951 (2012) (quoting *Minnesota v. Carter*, 525 U.S. 83, 88 (1998)). In other words, the Supreme Court confirmed that the question whether a property-owner's professed expectation of privacy is reasonable is closely related to the question whether the expectation is one that society is willing to recognize as reasonable. *See id.*

The Supreme Court clarified in *Jones* that while individuals have a protected property interest in their personal property, the interest still must be "recognized and permitted by society." *See Jones* 132 S. Ct. at 949-52. The interests recognized by society as valid do not include *unattended* personal items left on public property in violation of the law. The majority is concerned that if a "[v]iolation of a City ordinance [ ] vitiate[s] the Fourth Amendment's protection of one's property," then "the government could seize and destroy any illegally parked car or unlawfully unattended dog without implicating the Fourth Amendment."**5** Maj. Op. at 10586-87. The more

---

of the property would not likely succeed in a motion to have the evidence suppressed in a criminal prosecution. *Cf. California v. Greenwood*, 486 U.S. 35, 40 (1988) (holding that there was no reasonable expectation of privacy in the contents of plastic garbage bags left on or at the side of a public street).

**5**The majority does not really argue that a City may not seize an illegally parked car or an unlawfully unattended dog. Thus, it would appear that the majority's real concern is not with the constitutionality of the City's seizure of the unattended personal property but with the disposal of the property. Indeed, the district court's injunction allows the City to con-

apt comparison is leaving an unattended bag in the airport ter-
minal or a train station, where travelers are warned that such
unattended personal property may be immediately seized and
destroyed.[6] In the hypothetical of an illegally parked vehicle,
there is no warning that the vehicle, in addition to being tick-
eted and towed, will be destroyed. Here, just as in the airport
hypothetical, the City has a legitimate interest in immediately
destroying personal property left on the streets rather than
storing it for health and safety reasons.[7] Unfortunately, in
light of the incidents of domestic terrorism, the City must be
concerned with potential dangers arising from a cart, box,

---

tinue to seize property where it has "an objectively reasonable belief that
it is abandoned." But it is difficult for the City to determine whether per-
sonal items are unattended or abandoned. Furthermore, legitimate con-
cerns for public safety and health require that the City search and remove
unattended property on its public sidewalks. I would hold that the fact that
a cart is apparently unattended on a public sidewalk where warning signs
are prominently displayed allows the City to search and seize the property.

[6]Much like the cases involving unattended baggage in train stations and
airports, the City has an interest in removing carts, bags, and other con-
tainers from its sidewalks that may conceal bombs, weapons, biohazards,
or drugs. *See, e.g.*, *United States v. Gault*, 92 F.3d 990, 992 (10th Cir.
1996) (reasoning that the defendant's "expectation was not objectively
reasonable" where he "left his bag unattended, with no one there to watch
it or to protect it from being kicked or lifted").

[7]The City states that the "accumulation of things presents significant
health and safety problems" and bio-hazardous materials "draw rats and
breeds disease." Plaintiffs do not dispute this fact. While the majority
notes that Plaintiffs' carts might have contained personal identification
documents, medications, cell phones, and other important personal items
(*See* Maj. Op. at 10578-79), these items—when they exist—are often
commingled with soiled clothing, dead animals, drug paraphernalia, and
other hazardous materials, which pose health and safety problems. It is
unduly burdensome on the City workers to have to separate out the poten-
tial health and safety hazards from the non-hazardous items. Additionally,
the majority seems to suggest that the City may not even open bags or
containers to determine whether they contain hazardous materials.

bag, or other container left unattended in a public place as they could easily contain bombs, weapons, or bio-hazards.[8]

Accordingly, following *Jones*, this case turns on society's notions of expectations of privacy. *Cf. Jones*, 132 S. Ct. at 951. Common sense and societal expectations suggest that when people leave their personal items unattended in a public place, they understand that they run the risk of their belongings being searched, seized, disturbed, stolen, or thrown away. In other words, their expectation of privacy in that property is not one that "society [is] willing to recognize . . . as reasonable." *Ciraolo*, 476 U.S. at 211. Thus, even if Plaintiffs maintained a subjective expectation of privacy in their property despite having left it unattended on the public sidewalk, the risks to society are too great to recognize the expectation as reasonable. Accordingly, because the district court misapprehended the law, its ruling should be vacated.

### C.   Plaintiffs Did Not Have a Property Interest in their Unattended Personal Property Under the Fourteenth Amendment.

The Supreme Court has set forth a two-part test for analyzing a due process claim: "We must first ask whether the asserted individual interests are encompassed within the Fourteenth Amendment's protection of 'life, liberty or property'; if protected interests are implicated, we then must decide what procedures constitute 'due process of law.' " *Ingraham v. Wright*, 430 U.S. 651, 672 (1977). I agree with the City that

---

[8]The majority brushes off the City's concerns, reasoning that allowing the City to dispose of unattended personal items on its sidewalks would mean that "the government could seize and destroy any illegally parked car." Maj. Op. at 10586-87, n.8. However, the same health and safety concerns necessitating the immediate destruction of unattended personal property on the sidewalks do not arise with an illegally parked car. Additionally, society still recognizes an ongoing property interest in an illegally parked car that it does not recognize in unattended personal items left on public sidewalks. Thus, the majority's example is a straw man.

"because no constitutionally protected property interest is implicated by the City's purported conduct, the district court should never have addressed the second step of the due process analysis."

Property interests "are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972). In this way, the first step of the due process inquiry is very similar to the second inquiry of the Fourth Amendment test. The City does not dispute that Plaintiffs had a protected property interest in the personal property itself. The question is whether the Plaintiffs' actions in leaving their personal property unattended in a public place altered their property interest to one that society does not accept as reasonable. While this is a novel question of law, we are not wholly without guidance on this question.

Much like the objective reasonableness analysis under the Fourth Amendment inquiry, protected property interests under the due process inquiry "are defined by existing rules or understandings" of our society, and "unilateral expectation[s]" are insufficient to create a protected interest. *See Bd. of Regents*, 408 U.S. at 577. There is thus an objective element to the standard. However, the majority has not identified "an existing rule or law creating or defining this protected property interest." *See id.* The Eleventh Circuit has held that there is no "constitutional right to store one's personal belongings on public lands" regardless of subjective expectations. *Church*, 30 F.3d at 1345. Similarly, in this case, there do not appear to be any "existing rules or understandings" that provide Plaintiffs with an objectively protected interest that allows them to leave their belongings unattended on public sidewalks, even if temporarily.

California Penal Code section 647c provides that cities have the power to "regulate conduct upon a street, sidewalk,

or other place or in a place open to the public." Although this law is not definitive, it does suggest that California's "existing rules or understandings" weigh in favor of the City. *See Bd. of Regents*, 408 U.S. at 577. This is particularly the case where, as here, the preliminary injunction effectively prevents the City from carrying out its normal function of cleaning its sidewalks without risking legal liability. The courts should be reluctant to find a protected property interest where, as here, the result has far-sweeping implications for cities across the country, including their basic responsibility for public health and safety. This is precisely why the Supreme Court has cautioned that "the range of interests protected by procedural due process is not infinite," and has instructed the lower courts to focus on whether the property interest in question is recognized by "existing rules or understandings." *Bd. of Regents*, 408 U.S. at 570-71, 577. Also, Plaintiffs' claim that they maintain a property interest in personal property left unattended on public sidewalks is undercut by the fact that any citizen walking by the property could disturb or remove it.

Ultimately, Plaintiffs have not met their burden of citing any "existing rules or understandings" beyond their own "unilateral expectation[s]" to support their claim that they had a protected property interest in their unattended personal items. *Cf. Bd. of Regents*, 408 U.S. at 577. Thus, under *Board of Regents*, they have not demonstrated a protected property interest warranting the second step in the due process analysis. *Cf. Ingraham*, 430 U.S. at 672. Because Plaintiffs' claim fails at the first step of the due process inquiry, I would reverse the district court's ruling that Plaintiffs are likely to succeed on the merits of their Fourteenth Amendment claim.[9]

---

[9]I would find that Plaintiffs have not demonstrated a property interest subject to Fourteenth Amendment protection. However, even if there were such an interest, the breadth of the district court's order requiring the City to leave notices every time property is seized and to store the property for 90 days is troublesome. First, as property that is seized is unattended on a public sidewalk, it is not clear how the City can leave notices. The direc-

### III.   Conclusion

The majority has "misapprehend[ed] the law with respect to the underlying issues in the litigation."[10] *Cf. Walczak*, 198 F.3d at 730. The Fourth Amendment does not protect unattended personal property left on public sidewalks because the owners, by leaving their property unattended, have relinquished their objectively reasonable expectation of privacy in the property. Moreover, under both the second inquiry under *Katz* and the first step of the Fourteenth Amendment analysis, Plaintiffs' actions in leaving their personal property unattended in a public place reduced their interest in that property to one not within our existing societal rules and understandings. Whatever privacy or property interest Plaintiffs may have had in the property lost social recognition when the property was left unattended on the public sidewalks. Moreover, because Plaintiffs lack a protected property interest in their unattended personal items, I would not reach the second step of the due process analysis. Because society does not recognize Plaintiffs' alleged privacy and property interests as reasonable, I dissent.

---

tion to do so comes close to being an order to litter. Second, there is no explanation for why the City is compelled to store the property for 90 days rather than a week or some other length of time. These provisions appear to be burdensome to the City and unnecessary to the injunction's goal of preserving personal property for the owners to collect within a reasonable time.

[10]Were this case remanded, the district court would have to also carefully consider the balance of hardships and advancement of the public interest under *Winter*, 555 U.S. at 20-21.